Form to be used by a prisoner filing a civil rights complaint under
THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

RECEIVED
JUL - 8 2025
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JULIAN COLEMAN #455810
(Full name of plaintiff, Prisoner Number)

Civil Action:

Vs. E. DUSTIN BICKHAM; MARSHALL NAQUIN; RICKEY WILLIAMS; DARYL AUCION; ET. AL.
Full Name of Defendant

Judge

Magistrate Judge

# COMPLAINT

1. **Previous Lawsuits**:

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes { } No {X}

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
   Plaintiff(s): N/A

   Defendant(s): N/A

2. Court (if federal court, name the district; if state court, name the parish): N/A

3. Docket number: N/A

4. Name of judge to whom case assigned: N/A



JUL/01/2025 08:47 AM_9297811_0300247000_155575

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?): N/A

6. Date of filing lawsuit: N/A
7. Date of disposition: N/A
C. Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?
Yes [ ] No [X]

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought. N/A

**II.** Place of present confinement: Dixon Correctional Institute, Jackson, LA.

A. Is there a prisoner grievance procedure in this institution?
Yes [X] No [ ]

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes [X] No [ ]

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed: DCI-2024-663

2. What steps did you take? 1st Step to DCI Warden; 2nd Step to D.O.C. Secretary.

3. What was the result? Denied at both Steps.

D. If your answer is No, explain why not: N/A



JUL/01/2025 08:47 AM_9297811_0300247000_155575

III. Parties

(In Item A below, place you name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any)

A. Name of plaintiff (s): Julian Coleman

Address P.O. Box 788, Jackson, LA. 70748-0788

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B. Defendant E. Dustin Bickham is employed as Warden at Dixon Correctional Institute (DCI).

C. Additional Defendants: Marshall Naquin was employed as the Medical Director and Physician at DCI; Rickey Williams was employed at DCI as a Unit One Colonel (supervisor); Daryl Aucoin is employed at DCI as a Major (supervisor) on Unit One.

IV. Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not given any legal arguments or cite any cases or statutes**. If you intend to allege a number of related claims. Number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Please See attached pages #1-14



JUL/01/2025 08:47 AM_9297811_0300247000_155575

V. Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. Attach no exhibits: Please See attached pages #12 #13

VI. Plaintiff's Declaration

(1). I, Julian Coleman, understand that am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United states that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

(2). I, Julian Coleman, understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

(3). I, Julian Coleman, understand that if I am released or transferred, it is my responsibility to keep the court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

Signed this 1st day of July, 2025.

x Julian Coleman

Signature of Plaintiff (s)



JUL/01/2025 08:47 AM_9297811_0300247000_155575

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JULIAN COLEMAN
Plaintiff,

-V-

E. DUSTIN BICKHAM, RICKEY WILLIAMS, DARYL AUCOIN, MARSHALL NAQUIN, ET AL, sued in their individual and official capacities,

Defendants.

CIVIL ACTION

CASE No.________

COMPLAINT
42 U.S.C. Section 1983
42 U.S.C. Section 1985

## COMPLAINT WITH JURY DEMAND

## INTRODUCTION

This is a civil rights action filed by Julian Coleman, a state prisoner, for damages and injunctive relief under 42 U.S.C. Section 1983; 1985 alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution and U.S.C. Fourteenth Amendment (Due Process).

## JURISDICTION

1. The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. Section 1331(1) and 1343.

2. The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. Section 1367.

JUL/01/2025 08:47 AM_9297811_0300247000_155575

# PARTIES

3. The plaintiff, Julian Coleman, was incarcerated at the Dixon Correctional Institute in Jackson, Louisiana (DCI) during the events described in this complaint.

4. Defendants Rickey Williams and Daryl Aucoin are Correctional officers employed at DCI. They are sued in their individual capacities.

5. Defendant E. Dustin Bickham is the Warden over DCI and he is in charge of all operations and all programs and departments at DCI. He is being sued in his individual and official capacities.

6. Defendant Marshall Naquin was the Medical Director at DCI during the events described in this complaint. He was generally responsible for ensuring provision of medical care to prisoners and was the physician making medical decisions that is the basis for plaintiff's claim of the denial of prompt and proper medical care. He is being sued in his individual and official capacities.



JUL/01/2025 08:47 AM_9297811_0300247000_155575

7. All the defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

## FACTS

8. On May 9, 2024 the plaintiff was incarcerated at the Dixon Correctional Institute in Jackson, Louisiana and he was housed on Unit One, Dorm G.

9. On May 9, 2024, plaintiff declared that he was having a medical emergency due to a prolonged serious headache, dizziness, disorientation and trouble speaking and holding a thought process.

10. On May 9, 2024, plaintiff was seen by a health care provider at the DCI Infirmary. The nurse took the plaintiff's vital signs, however, plaintiff was not given any type of examination nor did he receive any other services before being charged for the medical emergency and told to go back to his dorm.

11. At all times prior to May 9, 2024, and on May 9, 2024, DCI medical staff were well aware that plaintiff had a severe underlying medical condition - multiple sclerosis.



JUL/01/2025 08:47 AM_9297811_0300247000_155575

12. Despite the pre-existing disease and the stroke symptoms plaintiff was experiencing and reporting on May 9, 2024, the medical provider informed plaintiff that Dr. Marshall Naquin would be "notified" and that he should just return to his dorm and "lay down".

13. Plaintiff returned to his living unit as he was told to on May 9, 2024 and layed down in his bed. On May 10, 2024 his symptoms had got progressively worse. Plaintiff had difficulty speaking, a severe headache, dizziness as well as being very disoriented as to day, time, and present events.

14. On the morning of May 10, 2024, plaintiff declared another medical emergency and was taken to the DCI Infirmary. Once again only vital signs were checked by a nurse and as the day before, no doctor or nurse completed any type of a check-up, examination nor did anyone even place plaintiff in an exam room to talk to him. He was merely told to return to his housing unit and "give the doctor time to review his medical records".

15. On May 10, 2024, upon plaintiff's return to Unit One defendant Major Daryl Aucoin witnessed him stumbling and in distress. Defendant Aucoin asked plaintiff what was wrong with him to which plaintiff responded that he had multiple sclerosis and



JUL/01/2025 08:47 AM_9297811_0300247000_155575

he described the neurological symptons he was having. Plaintiff also advised Aucoin that medical was refusing to exam him or call the doctor and that two days in a row he was told to go "lay down" in his dorm.

**16.** Defendant Aucoin took a flashlight off his belt area and personally looked into plaintiff's eyes on May 10, 2024, when he encountered plaintiff stumbling upon his return from the DCI Infirmary. Aucoin advised plaintiff to just go "lay down".

**17.** Plaintiff then advised Colonel Rickey Williams of the medical problems he was experiencing as well as the DCI Infirmary refusing to do any type of examination other than a quick blood pressure check and told to return to his dorm. Defendant Williams was the Unit One day shift Colonel during the events described in this complaint. As such, he was directly responsible for the safety and security of all Unit One inmates as well as for staff safety and security. Defendant Williams, despite knowing of plaintiff's pre-existing disease and seeing plaintiff barely able to speak, told plaintiff that the DCI doctor "has more important matters to attend to" and that the "doctor was more than likely in New Orleans attending to those matters." Williams told plaintiff "just go lay down." Neither Williams or defendant Aucoin would call the infirmary despite the obvious



JUL/01/2025 08:47 AM_9297811_0300247000_155575

distress that the plaintiff was experiencing.

18. On the afternoon of May 10, 2024, plaintiff woke up and got out of his bed. He was still having severe pain in his head and was dizzy and disoriented. Plaintiff iniatated another emergency sick call at the DCI infirmary. He was told that he was only experiencing vertigo and given a prescription for the drug-Meclizine- and advised this would clear up his symptoms as they were sure that he was only experiencing Vertigo.

19. The following day, May 11, 2024, plaintiff awoke experiencing double vision and still was experiencing the previous symptoms and pain that began days ago. That morning he telephoned his sister, Ms. Nicole Winding and his girlfriend, Ms. Omeeka Shannon, and told them both that he had been very sick and hurting for a number of days and he was being sent back from the DCI Infirmary when he sought help for his stroke-like symptons.

20. On May 11, 2024, after talking to the plaintiff and being alarmed at his difficulty talking and completing sentences, the sister contacted his mother, Marilyn Carter, and another sister, Ms. Sierra Coleman, and they all made a joint decision to seek immediate emergency care and they contacted 911 Emergency Services asking for help.

21. On May 11, 2024, an ambulance service contacted DCI authorities advising them of plaintiff's need for emergency services. It was only after being contacted by the ambulance service



JUL/01/2025 08:47 AM_9297811_0300247000_155575

that the medical department took action and called plaintiff to the Infirmary and soon after he was taken on an "emergency trip" to UMC-New Orleans.

22. Plaintiff was immediately admitted to the ICU unit and diagnosed as having suffered a stroke a number of days earlier. He was found to have swelling of the brain and spent five (5) days in the intensive care unit and was told numerous times throughout the hospital stay that by refusing to treat the plaintiff for the obvious symptoms of a stroke immediately after he first presented with the severe headache, lethargic behavior, slurred speech, and the dizziness--that DCI knew, or should have known, that this was a stroke and they knew, or should have known, that the survival rate of a stroke patient diminishes considerably if there is any type of delay in getting the patient to an emergency room to be treated by a specialist.

23. Defendant Naquin was previously employed as a emergency room physician just prior to his taking the DCI medical Director and treating physician job. It can be reasonable to believe that Naquin knew, or should've known, that he should've immediately sent plaintiff who was already diagnosed with multiple sclerosis to an outside hospital



JUL/01/2025 08:47 AM_9297811_0300247000_155575

however, due to lack of qualified medical staff, shortage of correctional officers, an overpopulation of infirmed and elderly prisoners in the Louisiana prison system as well as cost-control measures and procedures in place, the plaintiff's constitutional 8th Amendment right to not suffer cruel and unusual punishment was violated by the defendant's deliberate indifference to his serious medical needs resulting in severe physical and mental pain, Brain Swelling which permanetly damaged plaintiff's eyes and the nerves behind the eyes, a life-time of speech and communication issues, having to use a wheel chair and other apparatus to ambulate, and finally, the defendant's deliberate indifference to plaintiff's stroke symptoms that any layperson would've immediately recognized as a serious medical need requiring immediate attention by a specialist before brain damage begins — this will now result in permanent disability and a certain premature death for plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. The plaintiff has exhausted his administrative remedies with respect to all claims and all defendants.

## LEGAL CLAIMS

25. Plaintiff realleges and incorporates by Reference



JUL/01/2025 08:47 AM_9297811_0300247000_155575

paragraphs 1-23.

26. The deliberate indifference to serious medical needs violated plaintiff's rights and constituted cruel and unusual punishment under the Eight Amendment to the United States Constitution.

27. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declatory and injunctive relief which plaintiff seeks.

28. Coleman claims the heathcare providers did not meet the standard of care (breached their duty) expected in addressing serious medical symptoms and, by failing to diagnose a serious condition, due to ignoring his symptoms, lead to irreparable harm from strokes and advanced multiple sclerosis.

29. Under the Fourteenth Amendment to the United States Constitution, plaintiff claims that by healthcare providers ignoring his serious medical symptoms infringes upon his fundamental right to health and well-being, leading



JUL/01/2025 08:47 AM_9297811_0300247000_155575

to physical harm and suffering and, by him being denied the right to access care in order to address serious medical symptoms, it effectively denied Coleman the right to receive appropriate medical care.

30. Under 42 U.S.C. 1985, there is evidence of a conspiracy to prevent Coleman from receiving appropriate medical care (ignoring symptoms), which involved multiple parties acting in concert and, by failing to address serious medical symptoms (due process), resulted in significant harm and suffering (causing strokes, advanced multiple sclerosis and emotional distress).

31. Based on a discriminatory motive (inmate/offender), the group of healthcare providers and prison officials conspired to ignore serious medical symptoms that involved multiple parties acting in concert and, by doing so, the group of defendants denied equal protection and equal privileges, regarding medical care and treatment.

32. The necessity, for medical professionals to ensure that patients be provided informed consent before undergoing treatments or procedures, is underscored, pertaining to healthcare, under Article 2030 of the Civil Code.

Plaintiff was ambulated (DCI-Transportation), to UMC-New Orleans Hospital, without being assessed by a doctor or Nurse Practitioner, for his critical medical needs, while bypassing



JUL/01/2025 08:47 AM_9297811_0300247000_155575

local hospitals in the area, and Coleman was ambulated, only because, his family member called 911, requesting an ambulance for his critical medical treatment. DCI-HCP(s) Canceled the ambulatory services.

Upon arrival at UMC-NO Hospital, Coleman was experiencing a stroke, followed by progressed multiple sclerosis. Consistent physical and emotional therapies, brain dysfunction, damaged nerves behind the eyes, distorted equilibrium and trouble with his gait, while attempting to perform daily functions were the on-going results for such dismissal of heathcare and treatment because, while being transported from DCI to the hospital, Coleman was not under EMT and care but, under the transportation regulations of prison guards.

## CONCLUSION

By DCI's healthcare providers and its prison officials not addressing these claims and violations that involved not recognizing the importance of communication, adequate patient education, and ethical standards in medical practice, thus violating the provision of relevant information about Coleman's condition and treatment, beginning with the illness' onset, from the dorm-to infirmary- and being ambulated to UMC-NO Hospital with a stroke upon arrival and, after advanced medical testing of Coleman's brain, multiple sclerosis was determined, at a



JUL/01/2025 08:47 AM_9297811_0300247000_155575

critical level.

Only, if the healthcare providers and prison officials had given Coleman attention to his serious medical needs, he would not have experienced a lapse in medical care and treatment (providers allowing him to report symptoms only and, without him being triaged), causing his serious medical illness to worsen (critically), due to healthcare providers' failure to recognize and respond appropriately to serious medical symptoms, which the medical group could have avoided, instead of violating Coleman's right to access medical care and the defendants, collectively, could have ensured his rights were respected and upheld.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this Court enters judgement granting plaintiff:

33. A declaration that the acts and omissions that are described herein violated plaintiff's rights under the laws and constitution of the United States.

34. A preliminary and permanent injunction ordering defendants E. Dustin Bickham to have plaintiff regularly seen



JUL/01/2025 08:47 AM_9297811_0300247000_155575

by a neurologist for follow up treatment and for DCI medical staff to exam him when he makes "sick calls" as this does not exist.

35. Compensatory damages in the amount of $1,500,000 million dollars against each defendant, jointly and severally.

36. Punitive damages in the amount of $3,000,000 million dollars, against each defendant.

37. A jury trial on all issues triable by jury.

38. Plaintiff's costs in this suit

39. Any additional relief this Court deems just, proper, and equitable.

Respectfully submitted,

Dated: July 01, 2025

Julian Coleman

Julian Coleman #455810
Dixon Corr. Inst. U-2/D-7
P.O. Box 788
Jackson, LA. 70748-0788

JUL/01/2025 08:47 AM_9297811_0300247000_155575

## CERTIFICATE OF SERVICE

I, Julian Coleman #455810, do hereby swear that the U.S. District Court (Middle District), Baton Rouge, Louisiana has received a 42 U.S.C. § 1983 and § 1985 Complaint for civil rights actions of the above foregoings, by placing the original complaint and copies of documents of the foregoings in the U.S. mailbox at DCI, on the 1ST day of July, 2025.

Julian Coleman
Julian Coleman #455810

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Jackson, Louisiana, on July 01, 2025.

Julian Coleman
Julian Coleman #455810



JUL/01/2025 08:47 AM_9297811_0300247000_155575